## PHILLIPS v. TROUTMAN

(District Court, S. D. Georgia, W. D. July 13, 1912.)

**1. BROKERS (§ 11*)—ACTION FOR COMMISSION—BREACH OF CONTRACT.**

Where plaintiff, a broker, contracted to develop, subdivide, and sell certain of defendant's land either privately or at auction within one year for a cash commission of 15 per cent. of the gross sales, plaintiff agreeing to pay all expenses of advertising, surveying, etc., defendant's declination to "name the day" for a public sale did not constitute a breach of contract entitling plaintiff to recover damages.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 58; Dec. Dig. § 11.*]

**2. COURTS (§ 328*)—FEDERAL COURTS—JURISDICTION.**

Where a broker's contract of employment to develop and sell certain land authorized the owner to "call off the sale" on paying the broker $350 liquidated damages, the owner was only liable for such sum, whether he refused consummation after a sale was made or before the first steps to that end were taken, which amount was insufficient to confer federal jurisdiction in the broker's action for breach of contract.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890-896; Dec. Dig. § 328.*

Jurisdiction of Circuit Courts as determined by the amount in controversy. see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459; O. T. Lewis Mercantile Co. v. Klepner, 100 C. C. A. 288.]

At Law. Action by W. I. Phillips against J. F. Troutman. On demurrers to plaintiff's declaration. Sustained.

Burton Smith, of Atlanta, Ga., and Akerman & Akerman, of Macon, Ga., for plaintiff.

John P. Ross, of Macon, Ga., for defendant.

SPEER, District Judge. This is an action to recover damages for an alleged breach of the contract following:

"State of Georgia, County of Houston.

"Articles of agreement made this 8th day of April, in the year of our Lord nineteen hundred and nine, between J. F. Troutman, of Houston county, and state of Georgia, party of the first part, and W. I. Phillips, of Jacksonville, Duval county, Florida, party of the second part, witnesseth:

"That whereas the said party of the first part owns in fee simple a certain tract of land lying in Ft. Valley, Ga., and consisting of about sixty acres, and described as follows, to wit: Fronting Railroad avenue on the west, and on south side East Main street. north by property of Mrs. S. E. Borsett, on the east by property of Miss Fanny Borsett, and known as the Virgil Powers place.

"And whereas, the said party of the second part is engaged in the real estate business, making a specialty of sales thereof:

"Therefore, for and in consideration of the party of the second part agreeing to subdivide, advertise and auction off, or sell privately the aforesaid

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property within a period of twelve months from date, the said party of the second part agreeing to pay all advertising, surveying and contingent expenses attendant upon conducting an auction or private sale of said property in lots, the said party of the first part does hereby agree to allow said party of the second part to enter upon said last-described property to subdivide same as advantageously as possible and sell at public outcry to the highest bidder, or at private or other ·sale for the said party of the first part. The terms of said sale to be as follows: One-third cash, balance payable in eight quarterly payments, deferred· payments bearing eight per cent. interest per annum.

"The party of the first part agrees to pay to the said party of the second part in cash a commission of 15% of gross amount of sales.

"The party of the first part covenants that the property is clear of incumbrances, taxes, executions and liens of whatsoever kind, and has clear title to the property or same can and will be so by day of sale.

"The party of the first part guarantees the party of the second part a commission· of at least $350.00 in consideration of which the first party may call off said sale. The party of the first part further agrees to pay the second party $250.00 for developing such property.

"Should the party of the second part fail to carry out this contract and complete the sale within twelve months from date, this contract becomes null and void. Date of said sale to be mutually agreed upon.

"In witness whereof the said party of the first part and the said party of the second part, have hereunto set their hands and affixed their seals the day and year first above written.

"[Signed]             J. F. Troutman. [Seal.]
                      "W. I. Phillips. [Seal.]

"Signed, sealed, and delivered in the presence of us:
  "C. E. Martin, N. P. Houston Co., Ga."

[1] It is not alleged that the plaintiff did anything, or expended anything, in furtherance of the contract. No bid was solicited; no bidder appeared. The sale could have been either ·public or private. The plaintiff agreed to subdivide the defendant's land, and pay all expenses of advertising and surveying. Like Gallio, in Holy Writ, he cared for none of those things. Acts xviii, 17. But he now brings suit for damages in the sum of $5,500, because the defendant declined to "name the day" for the sale. This refusal was of little consequence. A covenant to "name the day" is often a sacred obligation, but not in a case like this. It sometimes results after what Chief Justice Marshall, in a letter to his wife, terms, "a little tiff and making up."

A case in point is that of John Browdie v. Tilda Price, 2 Nickleby, pp. 130, 131:

"'Ye're a feeckle, changeable weathercock, lass,' says I. 'Not feeckle, John,' says she. 'Yes,' says I, 'feeckle, dom'd feeckle. Dinnot tell me thou bean't effther yon chap at schoolmeasther's,' says I. 'Him,' says she, ·quite screeching. 'Ah, him,' says I. 'Why, John,' says she—and she coom a deal closer and squeedged a deal harder than she'd dean afore—'dost thou think it's nat'ral noo, that having such a proper man as thou to keep company wi', I'd ever tak' oop wi' such a leetle scanty whipper-snapper as yon?' says she. She said whipper-snapper! 'Ecod!' I says, 'Effther that, neame the day, and let's have it ower!' Ha! ha! ha!"

[2] Besides in this case the defendant reserved the right to "call off the sale," and the penalty therefor was liquidated; the sum being $350. This amount is less than the minimum jurisdictional sum fixed by law for this court. This he might do even after the sale was

made. A fortiori, could he do so before any sale was consummated, and before the first step to that end was taken.

The court is not disposed to deprive real estate agents of that high favoritism which has been accorded them by many tribunals. It is, indeed, a little hazardous to confer with one of these favorites of the law in any manner, or to any extent, regarding the sale of property. But no court, however favorably disposed to the engaging and attractive citizenship which devotes its attention to this industry, could we think discover a cause of action in the recitals of this declaration.

For these reasons, and many others which might be stated, all of the demurrers to the plaintiff's declaration must be sustained. Let order be taken accordingly.